# DAVID T. BONNELL

### *v.*

# HENRY H. WILDER.

1. BURDEN OF PROOF. Where a defendant, when sued upon a note, pleads payment and set-off, upon which issue is taken, the affirmative of the issues is upon him, and he is bound to sustain them by a preponderance of the evidence.

2. In such a case, where the only witnesses are the plaintiff and the defendant, and neither is impeached, and the plaintiff's evidence contradicts that of the defendant, the jury should look to the circumstances usually attending such a transaction as is testified to, which is a part of their general knowledge, and they ought to consider them and be governed by the reasonableness of the testimony of each when so viewed.

3. It is a well established rule in all courts, that a party who makes an affirmative allegation must maintain it by proof, and his proof must be superior to that offered by his adversary, or the negative will be presumed.

4. PAYMENT—*application of.* A debtor has the right, at the time of making a payment, to direct its application where the creditor holds one or more claims; but when not so directed, the creditor has the right to apply money paid to him, generally, to whatever debt he sees proper, unless there are circumstances rendering the exercise of such discretion unreasonable, or enabling him to do injustice to his debtor.

5. NEW TRIAL—*verdict against evidence.* In actions arising out of contract, this court will be less reluctant to set aside a verdict where it is apparent that the jury have mistaken the evidence, or found against its clear preponderance.

APPEAL from the Circuit Court of Jersey county; the Hon. CHARLES D. HODGES, Judge, presiding.

Mr. ALBERT G. BURR, and Mr. WILLIAM BROWN, for the appellant.

Messrs. WARREN & POGUE, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit on a promissory note. The pleas were, non-assumpsit, payment and set-off, on which issues were made up.

The plaintiff, to prove the issue on his part, introduced the note. To maintain the issues of defendant, he was himself the witness. They being affirmative issues, he was bound to sustain them by a preponderance of evidence. He testified that, before making the note sued on, he held a note on Levi Crane, secured by mortgage on certain personal property—a portable saw-mill, buggy, pair of timber wheels and three yoke of oxen ; that he could realize nothing on it ; the property was in dispute, and suits were pending both at law and in chancery, involving the title to it ; that he had prosecuted the suits until he was out of money, and could do no more. The plaintiff had, at that time, a judgment against him in the Jersey circuit court of over four hundred dollars. He then testified that plaintiff and he entered into an agreement, as follows : He gave plaintiff the Crane note and his title to the mortgaged property for this judgment against him, and plaintiff gave him one hundred dollars worth of goods "to boot," for which defendant gave the note sued on. He further testified that plaintiff said to him, "give me your note for one hundred dollars, and the first money I get out of the Crane matter shall go to pay the note." This was agreed to, and the defendant testified he gave the note, on the understanding if plaintiff received that much and interest, it was to apply on the note. This agreement was in writing, drawn up by Mr. Minor, and left with plaintiff. Since it was entered into, he had nothing to do with the Crane matter except as a witness. Plaintiff commenced suit in witness' name, which he attended as a witness. On his cross-examination, he said the Crane note was worthless if the mortgage failed ; in the agreement, the money first realized was to apply on the note, and plaintiff was to take his chance for the balance. Nothing was said about payment of expenses. Plaintiff did not recover the mill in the suits, but recovered the balance of the property. The judgment plaintiff held against witness was not entered satisfied, for the reason he was going to remove

to Oregon. He admitted receiving the goods to the amount of the note on the day of its date.

This is the defendant's case, under his pleas of payment and set-off, and the whole of his case.

The plaintiff testified, giving his version of the matter. He says he had, and still has, a judgment in the Jersey circuit court against the defendant. Defendant came to him and said he had a mortgage claim against Crane, and desired witness to carry on suits to recover the property, as he was out of funds ; said his family were greatly in need of some articles from the store, and if witness would let him have them he could take the mortgage claim, and whatever he could realize on it he should apply on defendant's indebtedness to him ; talked of the judgment witness held, and said his only show was for witness to manage the Crane matter and get money to pay himself. They finally made an agreement, which was put in writing ; witness did not keep the agreement; supposed it was in the hands of Minor, but on inquiry of him it could not be found. The agreement was, witness was to do the best he could to recover the articles named in the Crane mortgage, and out of whatever was realized, witness should pay the expenses of carrying on the suits, and apply whatever balance he might have to his claims against the defendant, and if there was still a balance left, witness was to retain it for his trouble, but was not to make any charge for his trouble unless he realized it out of the proceeds. At that time, his judgment against the defendant, including interest, was over seven hundred dollars. This note was not to be first paid out of the proceeds, but after meeting expenses, the balance, if any, was to apply on his claims against defendant, without any agreement as to the order of satisfaction. He admits the receipt of one hundred and seventy-six dollars and twenty-five cents, realized on the Crane claim, which is all he ever received. In the proceedings, he said, he has paid out more than three hundred dollars in fees, costs and expenses ; paid for law fees alone more than all he realized. There was

no provision in the agreement that this note was to be first paid. The note was given for goods passed over the counter to defendant, induced by the condition of defendant's family, as he stated. Had he recovered the mill, there would have been sufficient to satisfy his judgment and pay the note also, but as it was, he did not get enough to pay the expenses incurred in the attempt.

This is all the material evidence in the cause—the one party affirming a fact, and the other denying it. How, then, can it be said the affirming party has maintained his affirmation by a preponderance of testimony? Neither witness is impeached; both are equally credible. What is the jury to do under such circumstances? The answer is plain: look to the circumstances usually attending such transactions, which is a part of their general knowledge, and they must consider them and be governed accordingly.

It is a well established rule in all courts, that a party who makes an affirmative allegation must maintain it by proof; his proof must be superior to that offered by his adversary. *Watt* v. *Kirby*, 15 Ill. 200; *Union National Bank* v. *Baldenwick*, 45 ib. 375. Where a party affirms the existence of a material fact, he must prove it, or the negative will be presumed. *Union National Bank* v. *Baldenwick, supra.* And where the proof is equally balanced, or the jury are unable to determine that it preponderates in favor of the affirmative, the presumption of the negative is not overcome. Ibid.

This equilibrium may be destroyed by the surrounding circumstances. The jury, therefore, had no right to give the verdict as rendered. What circumstances should incline the scale in this case?

First, the reasonableness of the agreement as stated by the defendant. It is hardly probable a sane man would make such an agreement. Ignorant of the value of the mortgaged property, and of the condition of the litigation in which it was involved, it does not seem reasonable appellant should enter into it on the terms stated by the defendant. He must

have known, as all business men do know, that litigation in law and chancery is attended with heavy expenses—that there must be a large outlay of money; counsel must be employed and paid. In taking charge of such business, is it not reasonable, natural and common, nay, almost universal, that he who enters into it does and will provide for the costs and expenses attending its prosecution; and what more natural and universal, that the provision is made that they shall be paid out of the first proceeds? This is a strong consideration, which should have influenced the jury. There is another: Why was this note executed, if the agreement was that appellant should take the Crane claims for the judgment he held on appellee, and give him one hundred dollars' worth of goods "to boot?" Why a note in such case? Men do not usually so conduct an affair of this kind. If the goods were given by appellant as a premium over and above the value of the judgment and the Crane note and mortgage, there was an end of the matter. The delivery of the goods, and assignment of the Crane note, closed the trade. No business man would think of asking for a note under such circumstances, and none would be given. And why should the note express on its face, as this does, that it was due one day after date? It was not due at any time, if appellee's theory be correct. This circumstance, unexplained, should incline the balance in appellant's favor.

Another circumstance is, that appellee never demanded that appellant should enter "satisfaction" of the judgment which he had against him. The reason given by appellee, that "he was about to remove to Oregon," is frivolous. That would be a strong reason why satisfaction should be entered, lest the record should follow him to Oregon and he be required to satisfy it.

Appellee did not maintain the issue on his part, that is certain. The verdict is not sustained by the evidence, and should be set aside.

It is complained by appellant that the court misdirected the jury in the fourth instruction given for the defendant. It was as follows :

"4. The court instructs for Wilder, that the general rule is, that money received by the creditor, belonging to the debtor, will apply on any indebtedness due at the time, and it is the duty of the creditor to make the credit upon the first indebtedness due, in the absence of any special agreement to the contrary; and in the absence of such application and agreement to otherwise apply it, the law will presume that the creditor did apply it on such first indebtedness. Therefore, if you believe, from the evidence, that Bonnell received any money on a claim belonging to Wilder, assigned by Wilder to him, since the execution of the note in question, it was the duty of said Bonnell to have applied the amount so received by the said Bonnell, on the said indebtedness proved in this suit, unless said Bonnell has shown to you, by the preponderance of the evidence in this suit, that he, said Bonnell, was to apply the same in some other manner ; and in the absence of the preponderance of the evidence that Bonnell was to so apply the said money otherwise than on the note in question, the jury must allow Wilder a set-off against the note in question for the amount so received by said Bonnell ; and if the amount so received by Bonnell exceeded the amount of the note in question, and interest, you will find for the defendant."

It is well settled, a debtor has the right, at the time of making a payment, to direct its application, the creditor holding one or more claims. *Bayley* v. *Wynkoop*, 5 Gilm. 449; *Jackson* v. *Bailey*, 12 Ill. 159.

It is also held, a creditor has a right, unless otherwise directed, to apply money paid to him generally, to whatever debt he sees proper, unless there are circumstances rendering the exercise of such discretion unreasonable, enabling him to

do injustice to his debtor.   *Arnold* v. *Johnson,* 1 Scam. 196 ; *McFarland* v. *Lewis,* 2 ib. 345 ; *Bayley* v. *Wynkoop, supra.*

The instruction, as worded, led the jury to believe that the note in suit was the debt first due, as it had been most recently created, when, in the absence of any directions as to the application of the money, appellant had the right to apply it to any other demand he held against the defendant. The instruction was erroneous, and should not have been given.

Verdicts of juries should execute justice between the parties. We do not think this verdict does.

In actions like this, arising out of contract, we are less reluctant to set a verdict aside when it is apparent the jury have mistaken the evidence, or found against its clear preponderance.   *Dalton* v. *Clough,* 50 Ill. 47.

On another trial, the written agreement may be produced, or Mr. Minor, who drew it, may be sworn as to its contents, if lost. His testimony ought to settle the controversy.

For the reasons given, the judgment is reversed, and the cause remanded for a new trial.

*Judgment reversed.*