Charles Elkins, Plaintiff in Error, v. Daniel McCaskill and O. L. McCaskill, partners as McCaskill & Son, Defendants in Error.

### Gen. No. 17,365.

1. ATTORNEY AND CLIENT—*agreement to pay judgment not within scope of partnership.* Where one member of a firm of lawyers agrees to pay any judgment for costs that may be entered against the adverse party in a pending suit in consideration that the opposing attorneys will stipulate to waive the time limit for filing briefs, such an agreement is not within the general scope of the partnership, and in the absence of consent or ratification is not binding on the firm although it received the benefit.

2. ATTORNEY AND CLIENT—*agreement by attorney to pay any judgment client may obtain is illegal.* An agreement by an attorney with opposing counsel to pay any judgment his clients may obtain is illegal and void.

Error to the Municipal Court of Chicago; the HON. ARNOLD HEAP, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed November 29, 1912.

PERCIVAL STEELE, for plaintiff in error.

MCCASKILL & MCCASKILL, defendants in error, *pro se.*

MR. JUSTICE FITCH delivered the opinion of the court.

By this writ of error, plaintiff seeks to reverse a judgment for defendants, entered upon a directed verdict. Defendants are lawyers and were employed as such by one Schillinger and others to represent them in a suit brought against them by Elkins. The latter recovered a judgment and defendants, on behalf of their clients, sued out a writ of error in the Appellate Court. Through some mistake or misunderstanding, the McCaskills neglected to file their briefs and abstracts in apt time. Steele and Thompson, attorneys for Elkins, served notice that they would ask the court to dismiss the writ of error for that reason. Thereupon O. L. McCaskill, the son, asked Steele and Thompson to enter into a stipulation waiving the time limit and permitting the briefs and abstracts to be filed. They refused at first, but afterwards consented upon his paying them, for the use of Elkins, the full amount of the judgment recovered, with interest and costs, and upon his agreement to pay the amount of any judgment for costs that might be rendered against Elkins by the Appellate Court in case the judgment of the lower court should be reversed. The stipulation was signed and filed, the desired extension obtained, and the briefs and abstracts filed. Having received in this manner, the amount of the judgment, Steele and Thompson filed no briefs on behalf of Elkins. The judgment was reversed and a judgment for costs entered against Elkins, which he was obliged to pay. He brought suit against the McCaskills to recover the amount thus paid. At the close of all the evidence the trial court instructed the jury to find for the defendants.

We think the judgment must be affirmed. There was no evidence beyond the mere fact that the defendants

were partners, tending to prove that the elder Mc-Caskill had any knowledge of his son's agreement with Steele and Thompson or that he ever consented to, or ratified, the agreement. Such an agreement is not within the general scope of a partnership formed for the practice of law, and therefore no authority on the part of the younger McCaskill to bind his father can be implied merely from the fact of partnership. McNair v. Platt, 46 Ill. 211; Marsh v. Gold, 2 Pick. (Mass.) 285. Nor does the fact that the firm received the benefit of the agreement change the usual rule in this respect. Wittram v. Van Wormer, 44 Ill. 525; Watt v. Kirby, 15 Ill. 200; Funk v. Babbitt, 156 Ill. 408. The elder McCaskill filed a sworn plea denying any joint liability. The burden therefore, was on the plaintiff to establish a joint liability. In the absence of any evidence as to such liability on the part of Daniel McCaskill, any judgment against him and his son jointly would have been erroneous.

Furthermore, such a contract is clearly illegal. By its terms, according to the evidence of Steele and Thompson, the younger McCaskill agreed to assume a liability to his own clients for the amount of any judgment his clients might obtain against Elkins in a pending suit. They could obtain such a judgment only through the efforts of McCaskill & Son. If no such efforts were made, obviously no judgment would be obtained against Elkins. Manifestly such a contract, if enforceable, put the younger McCaskill in a false position, a position where there was a continual conflict between his personal interests and his duty to his clients. In effect, the contract required him to prosecute a suit against himself. If his clients succeeded through his efforts, he would be the loser. If his clients lost the suit, he would gain thereby. The relation of attorney and client is one of trust and confidence. Any agreement, the tendency of which is to cause a breach of trust or duty on the part of one who stands in a fiduciary or confidential relation, is illegal and void,

(9 Cyc. 470) not necessarily because it is against public policy, but because it is, in effect, an agreement to wrong or defraud the person whose interests the fiduciary has in charge. 9 Cyc. 474. Precedents are not wanting, however, to the effect that such agreements are contrary to public policy, and void for that reason. Adye v. Hanna, 47 Iowa 264; Spinks v. Davis, 32 Miss. 152.

The judgment will be affirmed.

*Affirmed.*